FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2010 NOV -3 AM 10: 46
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JAMES MARVIN COX, III, )
)
    Petitioner, )
)
v. ) CASE NOS. CV407-143
)          CR405-009
UNITED STATES OF AMERICA, )
)
    Respondent. )
_____)

## O R D E R

Before the Court is the Magistrate Judge's Report and Recommendation (Doc. 12), to which objections have been filed (Doc. 14). In the Report and Recommendation, the Magistrate Judge recommends that Petitioner's 28 U.S.C. § 2255 petition be dismissed. For the following reasons, the Report and Recommendation is **ADOPTED IN PART** and **REJECTED IN PART**. Because the Magistrate Judge incorrectly determined that Amendment 691 to the United States Sentencing Guidelines was a substantive amendment, the Court **DECLINES TO ADOPT** the portion of the Report and Recommendation concluding that the Court could not reach the merits of Petitioner's request for resentencing under that amendment. After a careful de novo review of the record, the remainder of the Report and Recommendation is

**ADOPTED** as the opinion of the Court. This case is again **REFERRED** to the Magistrate Judge for a determination of whether Petitioner is entitled to resentencing under Amendment 691.

In the Report and Recommendation, the Magistrate Judge concluded that Amendment 691 was a substantive, rather than a clarifying, amendment to the guidelines. Having the benefit of two cases decided subsequent to the Magistrate Judge issuing his report, this Court concludes that Amendment 691 was a clarifying amendment, which would be cognizable in a 28 U.S.C. § 2255 petition. In <u>United States v. Mills</u>, 613 F.3d 1070, 1072 n.2 (11th Cir. 2010), the Eleventh Circuit recognized that it had yet to articulate a test for determining whether a guideline amendment was clarifying or substantive. However, the Eleventh Circuit imported a three factor test from the Sixth Circuit: " '[h]ow the Sentencing Commission characterized the amendment; whether the amendment changes the language of the guideline itself or changes only the commentary for the guideline; and whether the amendment resolves an ambiguity in the original wording of the

2

guideline.'" Id. (quoting United States v. Monus, 356 F.3d 714, 718 (6th Cir. 2004)).

Applying that test to Amendment 691, it becomes apparent that Amendment 691 is intended to clarify the guidelines, not substantively change them. First, the Sentencing Commission stated that the purpose of the amendment was to "address a circuit conflict pertaining to the application of § 2K2.1(b)(5) (redesignated by this amendment as § 2K2.1(b)(6)) [sic] and (c)(1)), specifically with respect to the use of a firearm 'in connection with' burglary and drug offenses." U.S. Sentencing Guidelines Manual app. C, amend. 691 (2008). While the Sentencing Commission did not expressly label the amendment as clarifying, the Commission recognizes that "[c]larifying amendments are often promulgated to resolve 'circuit splits' on questions of guideline interpretation." U.S. Sentencing Commission, Guideline Amendments: the Amendment Process, Congressional Directives, Amendment Types and Retroactivity Issues 2 (2002), available at

http://www.ussc.gov/TRAINING/GLA.pdf.[1]  Therefore, this factor weighs in favor of finding the amendment clarifying.

Second, the amendment did not change the actual text of the guideline provision. While it did redesignate a few provisions of the guidelines to new subsections, the amendment did not alter any of the guidelines' actual text. Instead, the amendment added a definition of the phrase "in connection with" to the commentary for that provision. Compare U.S. Sentencing Guideline Manual § 2K2.1 cmt. (2005) (showing no definition of "in connection with"), with U.S. Sentencing Guideline Manual § 2K2.1 cmt. n.14 (2006) (defining "in connection with"). Therefore, this factor weighs in favor of finding the amendment clarifying because it only changed the commentary to the guideline, not the text of the guideline.

Finally, the amendment appears to have been an attempt to resolve an ambiguity in the guideline provision. When an amendment changes an unambiguous guideline provision,

---

[1] A copy of this internet material, as visited October 29, 2010, has been printed for permanent retention and preservation. The Clerk of Court is **DIRECTED** to include this document as Attachment 1 to this opinion.

the resulting change is considered substantive because there would be no need to make a clarifying change to a clearly understood provision. See Monus, 356 F.3d at 718. As noted above, the Sentencing Commission stated that the purpose of the amendment was to resolve a split among the Courts of Appeals as to the interpretation of the phase "in connection with." Therefore, this factor weighs in favor of finding the amendment clarifying because of the ambiguous nature of the underlying guideline provision.

In addition to all three factors indicating that the amendment is clarifying, the Eleventh Circuit recently observed that Amendment 691 appeared to clarify § 2K2.1(b)(6). United States v. Nicoll, 2010 WL 4008721, at *4 (11th Cir. Oct. 14, 2010) (unpublished). Because the Eleventh Circuit was not directly addressing whether Amendment 691 was clarifying or substantive, the Eleventh Circuit's description of the amendment as clarifying in Nicoll is not necessarily dispositive. However, that Court's characterization of the amendment, combined with this Court's assessment of the three factors named in Mills, leads this Court to conclude that Amendment 691 is

clarifying, not substantive. As a result, the application of the amendment to Petitioner's sentence is a claim cognizable in his habeas petition.[2] See Burke v. United States, 152 F.3d 1329, 1332 (11th Cir. 1998); United States v. Anderton, 136 F.3d 747, 750 (11th Cir. 1998).

SO ORDERED this 3RD day of November 2010.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[2] This, of course, does not mean that Petitioner is automatically entitled to relief. Rather, Petitioner may only receive relief if a complete miscarriage of justice would occur absent him being resentenced. See Burke v. United States, 152 F.3d 1329, 1331-32 (11th Cir. 1998).

# Guideline Amendments: the Amendment Process, Congressional Directives, Amendment Types and Retroactivity Issues



## June 1, 2002

## Prepared by the Office of General Counsel
## U.S. Sentencing Commission

Disclaimer: Information provided by the Commission's Legal Staff is offered to assist in understanding and applying the sentencing guidelines. The information does not necessarily represent the official position of the Commission, should not be considered definitive, and is not binding upon the Commission, the court, or the parties in any case.

1. Congressional Directives

   A. General and Specific Directives

Congressional directives to the Commission run the gamut from the general to the highly specific. General directives normally afford the Commission latitude to decide whether, or to what extent, guideline changes may be necessary. Good examples of general directives are found in section 2(b)(3) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, and in section 2(b)(3) of the Drug-Induced Rape Prevention and Punishment Act of 1996, Pub. L. 104-305. In the former, Congress directed the Commission to "review the guideline for peonage, involuntary servitude, and slave trade offenses and amend the guideline pursuant to that review." In the latter, Congress directed the Commission to "amend the guidelines to reflect the serious nature of offenses involving flunitrazepam." While the Commission was directed to change the guidelines in each of these instances, the manner and scope of the changes were left to the Commission.

Specific directives often require that the Commission delete identified guideline language and supplant it with specific language which Congress prefers. An example of such a specific directive is found in section 730 of the Antiterrorism and Effective Death Penalty Act of 1996, to wit: "the Commission shall amend the sentencing guidelines so that the adjustment in §3A1.4 (relating to 'international' terrorism) applies more broadly to a 'Federal crime of terrorism,' as defined in 18 U.S.C § 2332b(g)." Here, as is the case with many specific directives, the Commission's task was largely ministerial.

Some congressional directives do not require or even encourage the Commission to change the guidelines. For example, Public Law 104-71, December 23, 1995, 109 stat. 774, provided that: "Not later than 180 days after the date of the enactment of this Act, the United States Sentencing Commission shall submit a report to Congress concerning offenses involving child pornography and other sex offenses against children." The Commission was further requested to provide analysis of the sentences previously imposed for such crimes and to determine the recidivism rate for such offenders. Congress' requests for reports of this kind flow from the Commission's statutory duty to "reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process." 28 U.S.C. § 991(b)(1)(C).

   B. Commission Response to Congressional Directives

It is axiomatic that the Commission must comply with specific directives received from Congress. The Commission must, at a minimum, prescribe the penalties that Congress specifies. *United States v. LaBonte* 520 U.S. 751, 117 S. Ct 1673 (1997). However, consistent with its broad guideline promulgation authority pursuant to 28 U.S.C. § 994 (a), the Commission may prescribe more punitive treatment for offenses than those required under a specific directive. Of course, the guideline penalties remain constrained by any statutory minimum or maximum

sentence. *See, e.g., United States v. Parson*, 955 F.2d 858 (3d Cir. 1992); *United States v. Bellazerius*, 24 F.3d 698 (5th Cir.), *cert. denied*, 513 U.S. 954 *(1994); United States v. Rutherford*, 54 F.3d 370, 374 n. 11 (7th Cir. 1995); *United States v. Tomasino*, 230 F.3d 1034 (7th Cir. 2000); *United States v. Mendoza-Figueroa*, 28 F.3d 766 (8th Cir. 1994); and *United States v. Price*, 990 F.2d 1367 (D.C. Cir. 1993).

    C.    Emergency Amendment Authority

The normal rhythm of the Commission's amendment process is to solicit public comment on amendments the Commission is considering in late December or early January, analyze the comment received, and promulgate amendments for congressional review prior to May 1 of the year in which such amendments are to take effect. This affords Congress 180 days to review the amendments, as required by law, and to decide whether they are appropriate. If Congress does not pass legislation rejecting the proposed amendments, they become effective November 1 of the year they are promulgated. This timetable for the amendment process is comprehensively set forth at 28 U.S.C. § 994(p).

There are situations in which Congress desires a more rapid change in the guidelines. At such times Congress may extend "emergency authority" to the Commission to deviate from the timetable prescribed in 28 U.S.C. § 994(p). Once "emergency authority" is conferred, the Commission may immediately make the adjustment directed by Congress and, upon passage by the Commission, the amendment becomes effective on the date established by the Commission without intervening review by Congress. However, amendments enacted pursuant to "emergency authority" must undergo all customary procedural requirements of the general amendment process during the cycle immediately following their enactment. A recent example of an amendment promulgated pursuant to "emergency authority" is Amendment 542, effective May 1, 1997. The amendment, *inter alia*, increased the base offense level for offenses under §2H4.1(a), Peonage, Involuntary Servitude, and Slave Trade. This was done in response to Congress's express direction in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996.

II.    Types of Amendments

Amendments are of three types: Clarifying, substantive, and technical. Technical amendments simply deal with inadvertent errors *(e.g.,* the use of "kg" instead of "g" with reference to a controlled substance in the "Drug Quantity Table" at §2D1.1, or correction of a misspelling).

Clarifying amendments are made to resolve ambiguities in guideline language without any Commission intent to change the meaning or result of the provision affected. Clarifying amendments are often promulgated to resolve "circuit splits" on questions of guideline interpretation. When it is the Commission's intent that an amendment be considered a clarifying amendment, the Commission normally describes it as such in the Appendix C commentary to the amendment. A recent example of a clarifying amendment is Amendment 581, effective

November 1, 1998, the purpose of which "is to clarify what the term 'instant offense' means in the obstruction of justice guideline, §3C 1.1.

Substantive amendments alter a guideline in a way that can materially affect the length of sentences calculated under that guideline. Substantive amendments commonly occur as a result of newly created offenses or congressional redesignation of the seriousness of an existing offense. Amendment 576, effective November 1, 1998, provides a recent example of a substantive amendment which raises penalties 2 levels "if the offense involved theft of property from a national cemetery."

III.     Determination of Amendment Type

The current Appendix C to the *Guidelines Manual is* a chronologically arranged compilation of all 607 amendments made to the guidelines through November 1, 2000. In the discussion of each of these amendments will be found some reference to the purpose of each. If the Commission viewed the amendment as "technical" or "clarifying," such description will often be expressly provided; however, the Commission never expressly denotes any amendment "substantive." Rather, it expects that the overall description of a substantive amendment, and its plain terms, will evidence that the amendment is of a substantive nature. The Commission's characterization of an amendment as "clarifying" or "technical" is not dispositive. If it were dispositive, "that would enable the Commission to make substantive changes in the guise of 'clarification'." *United States v. Guerrero,* 863 F.2d 245 (2d Cir. 1988); *United States v. Cianscewski,* 894 F.2d 74 (3d Cir. 1990); and *United States v. Deigert,* 916 F.2d 916 (4th Cir. 1990). Thus, the courts must decide whether an amendment is substantive or merely clarifying by analyzing the amendment's impact in the context of existing circuit precedent.

The same amendment may be simultaneously clarifying in some circuits and substantive in others. The key is whether the amendment works a change in how the circuit has been applying that guideline. If a circuit has been applying a guideline consistent with the Commission's amendment, then, in the context of that circuit's guideline law, that amendment is merely clarifying. However, if a circuit has been applying a guideline in a manner inconsistent with the amendment, that amendment is substantive in that circuit, even if termed a "clarifying amendment" by the Commission. For example, in November 1993, the Commission amended the commentary to §3B1.1, Aggravating Role, to provide that an offender could not receive the three-level enhancement provided in that section for mere management of property acquired through criminal means. Prior to the amendment, the Fourth Circuit had, as a result of prior circuit precedent, been assessing the three-level enhancement for mere management of property as opposed to management of other individuals in a criminal enterprise. Despite the Commission's characterization of the 1993 amendment as "clarifying," the Fourth Circuit stated that it "is not a mere clarification because it works a substantive change in the operation of the guideline in this circuit." Based upon this analysis, the Fourth Circuit concluded that the amendment was indeed substantive. *United States v. Capers,* 61 F.3d I 100 (4th Cir. 1995). In contrast, in other circuits which had been applying §3B 1.1 in a manner consistent with the same amendment, the amendment was correctly interpreted as "clarifying."

3

IV.  Retroactivity of Amendments

Most circuits have held that a true clarifying amendment (one which does not alter circuit precedent) is always given retroactive effect since, by merely explaining or reiterating the *status quo*, it can work no harm against offenders with sentences pending. *See, e.g., United states v. Isabel*, 980 F.2d (1st Cir. 1992); *United States v. Perdomo*, 927 F.2d I I I (2d Cir. 1991); *United States v. Marmolejos*, 140 F.3d 488 (3d Cir. 1998); *United States v. Neilssen*, 136 F.3d 965 (4th Cir. 1998); *United States v. Fitzhugh*, 954 F.2d 253 (5th Cir. 1992); *United States v. Thompson*, 944 F.2d 1331 (7th Cir. 1991); *United States v. Douglas*, 64 F.3d 450 (8th Cir. 1995); *United States v. Innie*, 77 F.3d 1207 (9th Cir. 1996); *United States v. Howard*, 923 F.2d 1500 (11th Cir. 1991); and *United States v. Thomas*, 114 F.3d 228 (D.C. Cir. 1997). The Commission also enjoys statutory authority to make retroactive any amendment that results in a lower guideline range for purposes of reducing sentences of imprisonment of the offenders affected. *See USSG* §1B1.10(a). When the Commission declares an amendment retroactive, the sentencing court retains discretionary authority to determine whether the amendment should result in a reduced prison sentence. *See USSG* §1B1.10(b). This power in the Commission to declare such amendments retroactive has been sanctioned by the Supreme Court. *Braxton v. United States*, 500 U.S. 344, 111 S. Ct. 1854 (1991). However, some circuits do restrict retroactive application of clarifying amendments which are not specifically enumerated in §1B1.10 to the context of original sentencings. These circuits refuse to apply amendments which are enacted during an offender's appeal of his sentence. *See, e.g., United States v. Havener*, 905 F.2d 3 (1st Cir. 1990); *United States v. Nottingham*, 898 F.2d 390 (3d Cir. 1990); *United States v. Williams*, 905 F.2d 217 (8th Cir. 1990); and *United States v. Mooneyham*, 938 F.2d 139 (9th Cir. 1991). The common reasoning in these cases is that the state of the law at the time of the defendant's original sentencing hearing should control the determination of his sentence, absent direction to the contrary from the Commission. Also, these courts reason that a different rule would lead to a proliferation of baseless appeals lodged in the hope that the guidelines might change to the appellant's benefit.

An amendment that would have the substantive effect of treating an offender more leniently than the guidelines in effect at the time of the commission of the offense may be retroactively applied in some circuits to supercede circuit precedent, even though the Commission has not enumerated it at §1B1.10(c). *United States v. Joshua*, 976 F.2d 844 (3d Cir. 1992); *United States v. Fitzhugh*, 954 F.2d 253 (5th Cir. 1992); *United States v. Thompson*, 944 F.2d 1331 (7th Cir. 1991); *United States v. Garcia-Cruz*, 40 F.3d 986 (9th Cir. 1994); and *United States v. Caballero*, 936 F.2d 1292 (D.C. Cir. 1991). In contrast, the Fourth Circuit has expressly refused to apply retroactively any ameliorative substantive amendment which is not mentioned in §1B1.10(c). *United States v. Capers, supra.*

Those amendments that would treat an offender more harshly than the guidelines in effect at the time of the commission of the offense may never be applied retroactively. Retroactive application of this kind would violate the *Ex Post Facto Clause* of the United States Constitution. *See Miller v. Florida, 482 U.S. 423, 107 S. Ct. 2446* (1987). The Supreme Court has more recently interpreted the *Ex Post Facto Clause* to prohibit application of a law to an

4

offender when it (a) is retrospective in that it applies to events occurring before its enactment, and (b) disadvantages the offender by altering the definition of criminal conduct or increasing the penalty by which a crime is punishable. *California Department of Corrections v. Morales*, 514 U.S. 499, 506 n.3, 115 S. Ct. 1597, 1602 n.3 (1995). It need not be demonstrated that a new law actually results in a longer sentence than the law in effect at the time of the offense for *ex post facto* analysis to apply. When the new law disadvantages an offender even by depriving him of the opportunity to receive a lesser sentence that was possible at the time of his offense, a violation of the *Ex Post Facto Clause* occurs. *Lindsey v. State of Washington*, 301 U.S. 397, 57 S. Ct. 797 (1937), and *United States v. Florence*, 143 F.3d 11 (1st Cir. 1998). Whenever application of the *Guidelines Manual* in effect at sentencing is more onerous than the manual in effect at the time of the offense, that defendant must be sentenced under the *Guidelines Manual* in force at the time the offense behavior concluded. USSG §1B1.11(b)(1).

V.      The "One Book Rule"

Situations often arise in which an offender's offense conduct is completed while one edition of the *Guidelines Manual* is in force, yet sentencing does not occur until a later edition of the *Guidelines Manual* has taken effect. This situation requires a decision as to which edition of the *Guidelines Manual* should be used to establish the appropriate sentence. Because a variety of circuit court decisions came to different conclusions regarding how such sentences should be determined, the Commission promulgated §1B1.11(b)(2), often referred to as the "one book rule," effective November 1, 1992. Section 1B1.11(b)(2) requires use of the *Guidelines Manual* in effect at the time of sentencing unless doing so would violate the *Ex Post Facto Clause*. In that event, the *Guidelines Manual* in effect at the time of the completion of the offense is to be used. This eliminated the former practice in some circuits of "piecemeal" application of guidelines from two or more different manuals to compute a single sentence.

There is a continuing application problem in those multiple count situations in which the offense behavior underlying one count is completed while one version of the *Guidelines Manual* is in effect, yet the offense behavior underlying a separate count is governed by a later edition of the *Guidelines Manual*. The Commission promulgated §1B1.11(b)(3), effective November 1, 1993, to address these situations. Section 1B1.11(b)(3) requires simply that the later manual be applied to both counts. Some circuit courts have sanctioned §1B1.11(b)(3) in a broad sense. *United States v. Regan*, 989 F.2d 44 (1st Cir. 1993); *United States v. Kimler*, 167 F.3d 889 (5th Cir. 1999); *United States v. Cooper*, 63 F.3d 761 (8th Cir. 1995); and *United States v. Bailey*, 123 F.3d 1381 (11th Cir. 1997). However, other circuits have refused to automatically apply §1B1.11(b)(3)'s admonition to use the later manual in a multiple count situation spanning more than one manual. The fact that multiple counts are "groupable" under §3D1.2 has not been enough to overcome *ex post facto* concerns in the Third, Ninth and Tenth Circuits. In these circuits a showing of the "relatedness" of the counts must be made before the later edition of the *Guidelines Manual* may be used. *United States v. Bertoli*, 40 F.3d 1384 (3d Cir. 1984); *United States v. Ortland*, 109 F.3d 539 (9th Cir. 1997); and *United States v. Sullivan*, 242 F.3d 1248 (10th Cir. 2001). In the Second Circuit, endorsement of §1B1.11(b)(3) is suspect and qualified. *See United States v. Santopietro*, 166 F.3d 88 (2d Cir. 1999). Thus, as is sometimes the case with

5

issues of guideline construction, the way multiple count sentences with a retroactivity issue are computed is dependent upon the circuit in which sentence will be imposed.

VI. Conclusion

Congress envisioned the United States Sentencing Guidelines as a fluid document, one to be continually refined as new data and comment from the field indicated such need. *See* 28 U.S.C. § 994(o) and (m). Thus, the guideline amendment process and the Commission's resolution of "circuit splits" should be seen as complementary tasks. Hopefully, this brief document provides an appreciation of the complexity of these tasks, the factors which make them necessary, and an understanding of critical sentencing issues without which advocates working in the federal criminal justice system cannot responsibly represent their clients.